USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/25/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN LAHOUD,

Petitioner,

-against-

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,

Respondent.

25-CV-04136 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

John Lahoud ("Lahoud" or "Petitioner") filed a petition in New York state court to vacate an arbitration award in favor of Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill" or "Respondent") that was timely removed to this Court. Dkt. No. 1-1, *amended* at Dkt. No. 17 ("Am. Pet."). Merrill opposed the motion and filed a cross-motion to confirm the arbitration award. Dkt. No. 20 ("Opp."); Dkt. No. 22 ("Cross Pet."). For the reasons set forth below, Petitioner's motion to vacate is DENIED, and Respondent's cross-motion to confirm is GRANTED.

## BACKGROUND

### I. RELEVANT FACTS

#### A. Lahoud's Employment at Merrill and the Notes

Merrill Lynch is a securities broker-dealer and investment advisory firm based in New York. Am. Pet. ¶ 2. Lahoud was a FINRA registered broker and advisor at Merrill between August 2000 and 2007, and he rejoined the firm in September 2013. *Id.* ¶¶ 2, 8–9. Upon his 2013 return, Lahoud signed a revenue contract which based his compensation on his production

and contemplated an additional bonus based on revenue generated for the firm (the "Revenue Contract"). *Id.* ¶ 10.

Between September 2013 and August 2017, Lahoud accepted three loans Merrill offered, secured by three corresponding promissory notes: the first for $4,187,833.00 (Dkt. No. 17-14, "First Promissory Note"); the second for $731,058.75 (Dkt. No. 17-15, "Second Promissory Note"); and the third for $2,002,700.00 (Dkt. No. 17-17, "Third Promissory Note") (together, "the Notes"). Lahoud's payment obligations under the Notes were "unconditional" and entitled Merrill to "apply any amounts owed . . . as an offset against any repayment deficiency." *See* First Promissory Note §§ 5–6; Second Promissory Note §§ 5–6; Third Promissory Note §§ 5–6. They further provide that, "[w]here permitted by law," Lahoud must "reimburse [Merrill] for any and all damages, losses, costs and expenses (including attorneys' fees and court or arbitrator costs) incurred or sustained by [Merrill] as a result of the breach by [Lahoud] of any of the terms of this Note or in connection with the enforcement of the terms of this Note." First Promissory Note § 4; Second Promissory Note § 4; Third Promissory Note § 4.

On August 14, 2017, along with the Third Promissory Note, Lahoud was presented with a General Release and Agreement, a package that Lahoud alleges was, in part, designed to compensate for underpayment under his Revenue Contract. Am. Pet. ¶ 18; Dkt. No. 17-7 (the "Release"). As relevant to the present dispute, the Release released all claims against Merrill, "whether known or unknown," including those "arising out of, or relating to, [Lahoud's] employment or concerning events that have occurred during [Lahoud's] employment with Merrill Lynch" or concerning "compensation or bonuses." Release § 2(a). The Release did not apply, however, to "claims that first arise after the date [Lahoud] signs this Agreement or which

arise out of or in connection with the interpretation or enforcement of the Agreement itself." *Id.* § 2(d).

As Lahoud tells it, immediately after executing the Release, Merrill "continued to engage in wrongful conduct for which it was not released from liability," including, among other things, failing to intervene in defending "defamatory" allegations against Lahoud; failing to support Lahoud or properly advise him; and allowing other Merrill advisors to "improperly solicit" his customers. Am. Pet. ¶¶ 20, 24..[1] Lahoud purports that this "abuse" inevitably drove him to "seek alternative employment." *Id.* ¶ 22. On June 11, 2021, Lahoud left Merrill and shortly thereafter joined Rockefeller Capital Management. *Id.* ¶ 23; Cross Pet. ¶ 10.

At the time of his resignation, Petitioner owed $638,145.98 in principal on the first Note, $76,151.55 in principal on the second, and $467,296.82 in principal on the third, leading to a total outstanding balance of $1,181,594.35, plus interest. Cross Pet. ¶ 10. Around a month after Lahoud resigned, Merrill sent Lahoud a demand letter for the payment of his remaining balances. Am. Pet. ¶ 25. Lahoud failed to repay the remaining balances, and on August 31, 2022, Merrill initiated the FINRA arbitration underlying this matter, seeking to recover the funds due under the Notes. *Id.* ¶ 26.

**B. The Arbitration**

Merrill's Statement of Claim in the arbitration generally alleged (1) breach of promissory notes, (2) unjust enrichment, and (3) breach of the implied covenant of good faith and fair dealing. Dkt. No. 17-2. On December 12, 2022, Lahoud filed his answer, affirmative defenses, and counterclaims, which included claims for (1) breach of contract, (2) breach of the covenant

[1] Lahoud acknowledges that at least some of this allegedly wrongful conduct occurred prior to the signing of the Release. *See* Am. Pet. ¶¶ 12–17, 21.

of good faith and fair dealing, (3) tortious interference with contractual relationships or economic advantage, (4) unfair competition, and (5) unjust enrichment. *See id.* ¶ 28. Lahoud further asserted constructive discharge as an affirmative defense justifying his failure to repay the Notes. Am. Pet. ¶ 34.

Over two years later, a panel of two arbitrators (the "Panel") convened to consider both parties' evidence and testimony, and ultimately found for Merrill. Am. Pet. ¶¶ 35, 39; Dkt. No. 17-1 ("the Award"). The Panel awarded Merrill $1,181,594.35, representing the principal balance owed on the Notes, plus interest at the rate of $63.56 per day from June 11, 2021 until the date of the Award, and post-award interest at the rate of 5% per annum. Dkt. No. 17-1. Lahoud was also ordered to pay an additional $1,945.40 for costs associated with the action and $150,000 in attorney's fees. *Id.*

## II. PROCEDURAL HISTORY

On May 12, 2025, Lahoud filed a petition in New York state court to vacate the Award and Merrill removed to this Court four days later. Dkt. No. 1-1. Lahoud amended his petition, Dkt. No. 17, which Merrill responded to and opposed, Dkt. Nos. 18, 20. Merrill then filed a cross-motion to confirm the arbitration award, which Lahoud opposed. Dkt. Nos. 22, 25, 26.

# DISCUSSION

## I. LEGAL STANDARD ON A PETITION TO VACATE THE AWARD

"Vacatur of arbitral awards is extremely rare, and justifiably so."[2] *Hamerslough v. Hipple*, No. 10-CV-03056 (NRB), 2012 WL 5290318, at *3 (S.D.N.Y. Oct. 25, 2012). "To interfere with th[e] [arbitration] process would frustrate the intent of the parties, and thwart the

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

usefulness of arbitration, making it the commencement, not the end, of litigation." *Duferco Int'l Steel Trading Co. v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). Accordingly, "[i]t is well established that courts must grant an arbitration panel's decision great deference," *id.* at 388, and the party moving to vacate must satisfy a "very high" burden of proof. *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011). Indeed, arbitration awards ought to be confirmed if there is even a "barely colorable justification" for the decision. *Drywall Tapers and Pointers of Greater N.Y. Loc. Union 1974, IUPAT, AFL-CIO v. Visual Acoustics, LLC*, No. 17-CV-05431 (JGK) (KHP), 2018 WL 1596196, at * 2 (S.D.N.Y. Mar. 29, 2018) (quoting *U.S. Steel and Carnegie Pension Fund v. Dickinson*, 753 F.2d 250, 252 (2d Cir. 1985)).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996). Section 10(a) of the FAA provides four grounds upon which a federal court may vacate an arbitral award: (1) "the award was procured by corruption, fraud, or undue means," (2) "there was evident partiality or corruption in the arbitrators, or either of them," (3) "the arbitrators were guilty of misconduct" or "any other misbehavior by which the rights of any party have been prejudiced," or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

The Second Circuit has recognized "a judicially-created" gloss to the grounds under Section 10(a), holding that an arbitration award may be vacated when an arbitrator "has exhibited a manifest disregard of the law." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011); *see also Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021)

(confirming that an arbitrator's "manifest disregard" of the law or of the terms of the arbitration agreement "remains a valid ground for vacating arbitration awards.").

New York's arbitration laws similarly allow an award to be vacated "if the court finds that the rights of that party were prejudiced by . . . corruption, fraud or misconduct in procuring the award; or . . . an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter was not made." N.Y. C.P.L.R. § 7511(b)(1).

## II. THERE IS NO BASIS TO VACATE THE AWARD

Petitioner contests three components of the Award: (1) the attorney's fees awarded (which, according to Petitioner, are "excessive"); (2) the finding that the Release was inapplicable on future causes of action; and (3) the finding that Lahoud was not "constructively discharged." Am. Pet. ¶ 56. The Court will address each finding in turn.

### A. Attorneys' Fees

Petitioner first argues that the Panel exceeded its power, manifestly disregarded the law, and violated public policy by awarding Merrill "excessive attorneys' fees." Am. Pet. ¶¶ 57–69. The Court disagrees.

The Award states that Lahoud "is liable for and shall pay to [Merrill] the sum of $150,000.00 in attorney's fees pursuant to the terms of the promissory notes." Dkt. No. 17-1, at 3. The Notes each state that "[Lahoud] shall reimburse [Merrill] for **any and all damages, losses, costs, and expenses** (including attorneys' fees and court or arbitrator costs) incurred or sustained by the Lender as a result of the breach by [Lahoud] of any of the terms of this Note or **in connection with the enforcement of the terms of this Note**." First Promissory Note § 4; Second Promissory Note § 4; Third Promissory Note § 4 (emphasis added). The terms are clear: Merrill is entitled to recover costs associated with the enforcement of the terms of the Notes, and

it was not irrational for the Panel to have concluded that fees incurred in the Arbitration—including defending against the counterclaims that Lahoud asserted in response to Merrill's prosecution—are included in that calculation. But for Lahoud's noncompliance with the Promissory Notes, Merrill would not have initiated the Arbitration and incurred the associated attorney's fees.

Likewise, the attorney's fees in the Award, which as Merrill posits constitutes less than one third of its actual attorney's fees, is not clearly excessive nor in violation of New York law. *See* Dkt. No. 17-5. To the contrary, New York law favors honoring contractual bargains. *See, e.g.*, *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993) ("[W]here a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception."); *see also Diamond D. Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 18 (2d Cir. 1992) ("[W]here a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim."); *Cordius Trust v. Kummerfeld*, No. 99-CV-03200 (DLC), 2000 WL 264316, at *2 (S.D.N.Y. Mar. 8, 2000) ("Because it was necessary for the plaintiff to prevail on the defendants' counterclaims—which were substantially reformulations of the affirmative defenses—in order to recover under the promissory note, plaintiff may recover fees related to the defense of the counterclaims."). The Panel did not misapply or otherwise ignore clear law in its grant of $150,000 in attorney's fees. *See T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).

**B. The Release**

Petitioner next argues that the Panel exceeded its power and manifestly disregarded the law by barring Lahoud from recovering on claims that arose on or before the date of the 2017

Release. Am. Pet. ¶¶ 70–75. Lahoud posits that his causes of action and affirmative defenses "arose when he learned of the issues and discovered the harm resulting from Merrill's misconduct, which were all subsequent to the signing of the Release," and thus, the Release does not bar his claims. Am. Pet. ¶ 72; *see* Dkt. No. 17-7, at 5 (allowing claims that "first arise after the date Employee signs [the Release]."). The panel is not constrained to accept Lahoud's theory of the law, particularly in light of clear case law establishing that claims accrue at the time of injury. *See, e.g.*, *Roeder v. J.P. Morgan Chase & Co*., 523 F. Supp. 3d 601, 612 (S.D.N.Y. 2021) ("Under New York law, the time of injury, not discovery, governs accrual."). The one case cited in support of Lahoud's proposition actually supports Respondent's view of the law. *See Bassile v. Covenant House*, 575 N.Y.S.2d 233, 235 (Sup. Ct. N.Y. Cnty. 1991) *aff'd*, 594 N.Y.S.2d 192 (N.Y. App. Div. 1993)) (finding that "[i]n general, a cause of action accrues when there is an injury . . . even if the victim is ignorant of the existence of the wrong or injury" and declining to extend the discovery rule to a new area of law).

By declining to credit Petitioner's theory as to when his injury arose, the Panel did not exceed its power or manifestly disregard the law. Rather, it operated reasonably and within existing law by giving appropriate effect to the Release.

**C. Constructive Discharge**

Finally, Petitioner argues that the Panel exceeded their powers, manifestly disregarded the law, and issued an irrational award when it declined to find that Lahoud was "constructively discharged," arguing that "[n]o reasonable person would have stayed at Merrill after these meritless accusations of mortgage fraud were advanced" against him. Am. Pet. ¶¶ 77–81. The Court, once again, cannot agree.

As a preliminary matter, "it is undeniably true that New York does not recognize a common law cause of action for constructive discharge for at-will employees," *Silberman v.*

*Atlantic Dialysis Mgmt. Servs., LLC*, Case No. 17-CV-07019, 2018 WL 4335510, at *5 (S.D.N.Y. Sept. 11, 2018), and nowhere does Lahoud allege he was not an at-will employee. In any event, it is not this Court's role to second guess the Panel's sound judgment—only to determine whether the panel "even arguably constru[ed] or appli[ed] the [governing documents] and act[ed] within the scope of [its] authority." *United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). The Panel's determination fits comfortably within that low standard, given that Lahoud planned to resign after negotiating a new position at a competing firm for his entire team, earning millions of dollars in the interim. *See* Opp. at 20.

## III. THE AWARD IS CONFIRMED

Merrill cross-moves to confirm the arbitration award under 9 U.S.C. § 9. *See* Cross Pet. "An arbitration award should be confirmed unless the award is vacated, modified, or corrected." *Bogar v. Ameriprise Fin. Servs., Inc.*, No. 16-CV-07199 (GHW), 2017 WL 1745566, at *4 (S.D.N.Y. May 4, 2017). Further, "[d]ue to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." *First Cap. Real Estate Invs., L.L.C. v. SDDCO Brokerage Advisors, LLC*, 355 F. Supp. 3d 188, 196 (S.D.N.Y. 2019). For the reasons explained above, Petitioner has not met his burden nor provided any basis on which to vacate, modify, or correct the Award, nor can the Court independently discern any basis to do so. Merrill's cross-motion to confirm the Award is GRANTED, and the Award is confirmed.

## CONCLUSION

The Court's role in vacating or confirming an arbitration award is "extremely limited," *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Stop & Work Constr., Inc.*, No. 17-CV-05693 (JGK), 2018 WL 324267, at *2 (S.D.N.Y. Jan. 5, 2018), and district courts "are not

authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). For the reasons explained above, there is no justification for reaching the extreme result Petitioner seeks. Accordingly, the Petitioner's motion to vacate the Award is DENIED, and Respondent's cross-motion to confirm the Award is GRANTED.

The Clerk of Court is respectfully directed to enter judgment confirming the arbitration award and CLOSE this case.

Dated: September 25, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge